IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LARRY CALDWELL,<br><br>          Plaintiff,<br><br><br>     v.<br><br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security Administration,<br><br>          Defendant. | Case No. 2:06-CV-1027 SA<br><br><br><br>**MEMORANDUM DECISION AND<br>ORDER** |

     Before the court is an action filed by Plaintiff, Larry
Caldwell, asking the court to reverse the final agency decision
denying Plaintiff's applications for Disability Insurance
Benefits (hereafter "DIB") under Title II of the Social Security
Act.  *See* 42 U.S.C. §§ 401-434.  The Administrative Law Judge
(hereafter "ALJ") found that Plaintiff was not disabled because
Plaintiff was capable of performing substantial work that existed
in the national economy.  Plaintiff now challenges the ALJ's

_____

     [1]On February 1, 2007, Michael J. Astrue became the
Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of
the Federal Rules of Civil Procedure, Michael J. Astrue should be
substituted for Commissioner Jo Anne B. Barnhart as the defendant
in this suit.  No further action need be taken to continue this
suit.  *See* 42 U.S.C. § 405(g).

decision by arguing that it is not supported by substantial evidence and it is legally erroneous.

The court has carefully considered the parties' memoranda and the complete record in this matter and concludes that oral arguments would not materially assist it in the determination of this case.  Based on the analysis set forth below, the court concludes that Plaintiff's request that the court reverse and remand the ALJ's decision be denied.

## BACKGROUND

Plaintiff protectively applied for DIB on May 27, 2003, alleging an onset of his disabling condition of April 1, 2000. (Docket Entry #7, the certified copy of the transcript of the entire record of the administrative proceedings relating to Larry Caldwell (hereafter referred to as "Tr. at __") at 78-88.) Plaintiff's application was denied initially and upon reconsideration.  (Tr. 57, 58, 61-63.)  Plaintiff then filed a request for a hearing before an ALJ.  (Tr. 59-60.)  Plaintiff and a vocational expert (hereafter "VE") testified at the April 14, 2005 hearing.  (Tr. 514-62.)  On August 17, 2005, the ALJ issued her decision denying Plaintiff's application.  (Tr. 16-35.) Plaintiff requested review of the ALJ's decision on October 12, 2005.  (Tr. 9-12.)  The Appeals Council denied Plaintiff's request for review (Tr. 4-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981.

On December 12, 2006, after receiving the Appeals Council's denial of his request for review, Plaintiff filed his complaint and the case was assigned to United States District Judge Tena Campbell.  (File Entry #3.)  On January 26, 2007, the parties consented to the magistrate judge conducting all proceedings in this case, including entry of the final judgment, and Judge Campbell referred the case to United States Magistrate Judge Samuel Alba pursuant to U.S.C. § 636(c).  (File Entry #4.)  On February 14, 2007, the Commissioner filed his answer and the administrative record.  (File Entries #6, 7.)

On May 4, 2007, Plaintiff filed his memorandum in support of reversal or remand of the Commissioner's Administrative Decision. (File Entry #10.)  On June 1, 2007, the Commissioner filed his brief in opposition.  (File Entry #12.)  Plaintiff filed a reply brief on June 21, 2007.  (File Entry #13.)

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether correct legal standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *accord Pisciotta v. Astrue*, 218 Fed. Appx. 765, 766 (10th Cir. 2007).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Besides the lack of substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the

3

Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10ᵗʰ Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10ᵗʰ Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10ᵗʰ Cir. 1993).

### ANALYSIS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and is legally erroneous.  Specifically, Plaintiff argues: (1) the ALJ improperly rejected the opinions of Plaintiff's treating physicians; (2) the ALJ improperly denied Plaintiff's claim based on Plaintiff's failure to follow treatment; (3) the ALJ erred in failing to fully and fairly develop the record; and (4) the ALJ failed to pose an accurate hypothetical question to the VE, and thus failed to meet her burden at step five of the disability analysis.  The court addresses each of these four arguments in turn.

### A.  Treating Physicians' Opinions

A treating physician's opinion is entitled to great weight and the Commissioner must provide "'specific, legitimate reasons'" for rejecting that opinion.  *See Miller v. Chater*, 99 F.3d 972, 976 (10ᵗʰ Cir. 1996) *(quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10ᵗʰ Cir. 1987)).  Those reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, at *5.

4

Bare conclusions are "beyond meaningful judicial review."

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  Plaintiff

argues the ALJ improperly rejected the opinion of Plaintiff's

treating physicians.  Specifically, Plaintiff argues the ALJ

improperly rejected the opinions of Ms. Jensen and Mr. Gillen,

Plaintiff's therapists.  Plaintiff also argues the ALJ improperly

rejected the opinion of Dr. McGirk.

In his opinion, the ALJ explained that he was giving greater

weight to Mr. Hunsaker's 2003 opinions than to the 2005 opinions

given by Mr. Gillen and Ms. Jensen.  (Tr. 30.)  The ALJ gave

several reasons for his decision:

> The Administrative Law Judge gives some
> weight to the reports of the claimant's
> mental health providers, although they
> contradict each other.  Statements made in
> 2005 were based on the claimant's mental
> status after a significant gap in treatment.
> These statements are given less weight than
> the summary of treatment made by Dr. Hunsaker
> in July 2003 after six months of treatment.
> It is clear that when the claimant was stable
> in recovery, he was able to focus on mood
> management and function in a self-sufficient
> manner.  This conclusion is supported by
> testimony of the medical expert.  It is also
> interesting to note that the initial focus in
> 2003 on depression, anxiety and obsessive
> compulsive behaviors changed to a focus in
> 2005 on bipolar disorder.

(Tr. 30-31.)  Thus, the reasons given by the ALJ for giving

greater weight to Mr. Hunsaker's 2003 opinions than to Mr. Gillen

and Ms. Jensen's 2005 opinions is that the 2005 opinions were

given after a significant amount of time had passed since they

had treated Plaintiff, while the 2003 opinions were given immediately after Mr. Hunsaker had treated Plaintiff for six consecutive months.  In addition, the ALJ concluded that the 2003 opinion represented Plaintiff's mental status with the benefit of consistent treatment, which the ALJ perceived as being supported by the medical expert's testimony.

These reasons given by the ALJ are specific.  Plaintiff, however, argues that they are not legitimate reasons.  Plaintiff makes several arguments in an effort to convince the court that the ALJ's assessment was made in error.  Plaintiff argues the 2003 and 2005 reports are not contradictory, that the 2005 report should carry greater weight because it provides much more detail and is more recent, and that the 2005 report should be given greater weight because the limitations in the 2005 report were largely based on the personal observations of Plaintiff's behavior in a clinical setting rather than on his suspected behavior during the eight months his therapists did not hear from him.  The court has carefully reviewed each of Plaintiff's four arguments and concludes that they do not show that the ALJ's decision was erroneous.  Plaintiff's arguments seek, in essence, to have the court reevaluate the ALJ's decision rather than simply examine whether those reasons are specific and legitimate. However, this is not the proper standard.  Instead, the court is not to reevaluate the ALJ's decision de novo, but is to simply examine whether the ALJ gave specific, legitimate reasons for his

decision.  Having considered Plaintiff's arguments, the court
still concludes that the ALJ's reasons for giving greater weight
to Mr. Hunsaker's opinion were sufficiently specific and
legitimate, and therefore the court rejects Plaintiff's argument.

    Plaintiff also argues that the ALJ completely failed to
explain why he rejected Dr. McGirk's report, including Dr.
McGirk's description of Plaintiff's pain and his need to spend
several days at a time in bed when he gets flare-ups.  Having
carefully reviewed this argument in light of the record, the
court rejects it.  The ALJ described in some detail Dr. McGirk's
report.  (Tr. 22-23.)  The ALJ described Dr. McGirk's report by
separating out those observations in the report that Dr. McGirk
made based on his own examination of Plaintiff and Dr. McGirk's
recitation of Plaintiff's description to Dr. McGirk of
Plaintiff's problems.  Dr. McGirk's notation that Plaintiff had
flare-ups that required him to be in bed for several days at a
time was part of Dr. McGirk's report that was simply a recitation
of Plaintiff's subjective complaints.  (Tr. 23, 194-96.)  The ALJ
again referred to this portion of Dr. McGirk's report in his
credibility evaluation of Plaintiff.  The ALJ explained that
although Plaintiff had reported to Dr. McGirk that he got flare-
ups three to four times a year and that those flare-ups lasted
from days to a month, Plaintiff had testified to the ALJ that his
flare-ups lasted three to four days.  (Tr. 28.)  The ALJ also
noted Plaintiff testified that he felt better one day later after

having a flare-up.  (Tr. 28.)  Thus, the ALJ's opinion did
address Dr. McGirk's report, and specifically the section of the
report regarding Plaintiff's flare-ups and his need to stay in
bed.  The ALJ used Plaintiff's comments to Dr. McGirk as an
example of Plaintiff's tendency to exaggerate his symptoms.  (Tr.
28.)  Thus, the ALJ did not fail to address Dr. McGirk's report
and instead gave specific, legitimate reasons for finding not
credible that part of the report that was simply a recitation of
Plaintiff's subjective complaints to Dr. McGirk.

### B.   Failure to Follow Prescribed Treatment

     Second, Plaintiff argues that the ALJ erred by denying
benefits based on Plaintiff's failure to follow prescribed
treatment.  Plaintiff argues "the ALJ's finding that the claimant
does not have disabling impairments when he follows prescribed
treatment is the equivalent of denying his claim based on a
failure to follow prescribed treatment" and that it was "improper
for the ALJ to make this assertion without following the
procedures outlined in the regulations and rulings."  (Docket
Entry #10, at 15.)

     The court disagrees with Plaintiff's characterization of the
ALJ's opinion.  The ALJ did not deny benefits based on
Plaintiff's failure to follow prescribed treatment.  The ALJ
found it "important to note that the claimant is not always
compliant with his treatment" in the ALJ's credibility analysis.
(Tr. 28.)  The ALJ gave specific examples from the record

illustrating Plaintiff's failure to follow prescribed treatment, but only in terms of supporting the ALJ's credibility analysis. (Tr. 28.)  As Defendant points out, the ALJ was entitled to engage in a credibility analysis.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Because Plaintiff's argument is based on a mischaracterization of the ALJ's opinion, and because the ALJ was entitled to evaluate Plaintiff's credibility, the court rejects Plaintiff's argument.

### C.   Development of Record

Third, Plaintiff argues that the ALJ erred by failing to fully and fairly develop the record.  Specifically, Plaintiff argues that the ALJ should have ordered a psychological evaluation in order to determine the extent of Plaintiff's mental health limitations.

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability."  *Branum v. Barnhart*, 385 F.3d 1268, 1271 (2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).  "However, unlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal

9

citations omitted) (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)).  The ALJ has this responsibility even if the claimant is represented by counsel.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).  However, the ALJ has discretion over consultative examinations and testing and such are only required when there is not sufficient evidence to make a determination.  *See* C.F.R. § 404.1519a; *Hawkins*, 113 F.3d at 1167.

Having carefully considered the record and the ALJ's decision, the court concludes that the ALJ had enough information within the record to make a finding that Plaintiff was not disabled due to any mental condition.  The ALJ considered the various opinions from Plaintiff's treating therapists, Ms. Jensen and Mr. Gillen, and noted that the evidence was inconsistent. (Tr. 30.)  The ALJ then gave greater weight to the opinions of another treating therapist, Mr. Hunsaker.  As discussed in detail above, the ALJ cited his reasons for giving greater weight to Mr. Hunsaker's opinions regarding Plaintiff's mental status.  (Tr. 30-31.)  Whether this court would have chosen to order a psychological evaluation is not the standard.  The standard is whether the ALJ was required to order the evaluation because the record lacks sufficient evidence to make a determination. Because the court concludes that the record contained sufficient evidence allowing the ALJ to make a determination, the court

concludes that the ALJ did not err by not ordering a psychological evaluation.

Plaintiff argues that his position is supported by the medical expert who testified at the hearing before the ALJ.  The medical expert was asked, "Do you think a psychological evaluation is needed?"  (Tr. 561.)  The medical expert replied, "I think the treatment notes are needed, and on the basis of the treatment notes I'd be making that determination, but it's pretty much dependent on those treatment notes.  If those treatment notes provide enough information, I'd say no.  If they don't, then a psychological evaluation might be helpful."  (Tr. 561.) Thus, the medical expert's response generally fits the legal standard the court already examined in determining whether the ALJ was required to order a psychological evaluation.  The medical expert's opinion that an evaluation "might be helpful" if treatment notes did not provide enough information does not persuade the court that the ALJ was required to order a psychological evaluation.

As a result, the court rejects Plaintiff's argument.

**D.   Hypothetical Question Poised to Vocational Expert**

Finally, Plaintiff argues the ALJ erred by failing to include in his hypothetical question to the VE both the limitations provided by Plaintiff's mental health providers and the limitations identified by Dr. McGirk in his report, including that Plaintiff had to lie down for days at a time when he had

11

exacerbations of neck pain.  Plaintiff argues that because the

ALJ's hypothetical did not relate with precision all of the

claimant's functional limitations, the VE's testimony in response

to that hypothetical cannot provide substantial evidence

necessary to deny Plaintiff's claim.

The court also rejects this argument.  The ALJ did address

Plaintiff's alleged mental limitations in his hypothetical

question to the VE when he limited him to moderate limitations in

areas of understanding, remembering, and carrying out detailed

instruction; maintaining extended attention and concentration;

and responding appropriately to changes in the work setting.

(Tr. 557-58.)  Furthermore, as Defendant points out, the jobs

identified by the VE, in response to the ALJ's hypothetical

questions, were all unskilled, and unskilled work requires only

an ability to understand, carry out, and remember simple

instructions.  *See* SSR 85-15.

To the extent Plaintiff's argument is a challenge to the

ALJ's decision to give greater weight to the 2003 opinions than

the 2005 opinions of Plaintiff's therapists, that argument has

already been addressed and rejected by the court in the above

analysis.

Finally, with regard to Plaintiff's argument that the

alleged physical limitations were not included in the

hypothetical question, Dr. McGirk did not provide anywhere in his

report that Plaintiff needed to lie down for several days at a

time due to exacerbation of pain.  Instead, as discussed above in

the court's analysis, Dr. McGirk simply recited Plaintiff's

subjective complaints, and also as discussed above, the ALJ found

those subjective complaints not credible.  As such, the ALJ was

not required to include them in the hypothetical question to the

VE.

**ORDER**

Based on the above analysis, **IT IS HEREBY ORDERED** that

Plaintiff's request that the Commissioner's decision be reversed

or remanded is **DENIED**.

DATED this 31st day of March, 2008.

BY THE COURT:

_____

Samuel Alba
United States Chief Magistrate Judge